BARNABAS T. MULFORD and Wife and THEODORE TODD *v*. JOHN RUNK and Wife, RICHARD TENYCK and Wife, and others.

The bill stated, that W. T., deceased, had become liable as security for his son for several debts, and that judgments had been obtained against him therefor; and that all his estate, real and personal, was sold, at Sheriff's sale, by virtue of executions issued on the said judgments, and was all purchased at said sale by J. R. and R. T., his sons-in-law. That the personal property so sold was of the value of $1,500, and was sold for $315 78. That the real estate so sold was of the value of $6,000, and was sold for $2,800. That W. T. was averse to letting his property be sold on execution; but that J. R. and R. T. induced him to permit it, by telling him that the only way to defend himself against other claims arising on endorsements for his son, on which suits had been commenced, was, to allow his property to be sold at Sheriff's sale. That W. T. consented to let his property be thus placed in the custody of J. R. and R. T., for the purpose of paying the judgments which had been obtained, and of protecting the property from the said claims on which suits had been commenced, and on the further condition that said W. T. should have his support out of the farm, and that, on his death, the farm should be sold, and the proceeds divided according to his will. That a written agreement was entered into by J. R. and R. T., stipulating with the said W. T. for the performance of the said terms and conditions; and that the said written agreement had been, since the Sheriff's sale, either lost, or fraudulently taken by J. R. and R. T. from the possession of said W. T.

The bill was exhibited by two of the children of W. T., deceased, praying performance of the alleged agreement.

The answer denied the alleged agreement, and there was no sufficient proof of it.

*Semble,* That such an agreement is not entitled to favorable consideration.

On the 24th September, 1846, Barnabas T. Mulford and Margaret Ann, his wife, and Theodore Todd, exhibited their bill, stating, that William Todd, late of Somerset county, previous to April 1, 1841, was seized and possessed of certain tracts of land described in the bill. That the said William Todd was, in his lifetime, and at the time of the Sheriff's sale after mentioned in the bill, possessed of a large amount of personal property, consisting of household furniture, farming utensils, stock on farm, corn, wheat and rye, and cattle, sheep and hogs, and, among other live stock, was possessed of nine cows, six horses, three hogs and six sheep; which said live stock, alone, the complainant believes and charges, was worth more than the sum of

$315 75, the proceeds of the sale of the whole of the personal property of the said William Todd at the said Sheriff's sale after mentioned in the bill. That the whole of the personal property of the said William Todd sold at said Sheriff's sale could not have been of less value than $1,500.

That, some time previous to the year 1843, the said William Todd became security for his son James W. Todd, by endorsing his notes and otherwise assuming responsibilities for him. That, on or about November 9, 1841, one Stephen Brown recovered a judgment, in the Supreme Court, against James W. Todd and the said William Todd and John Cox and others, for a debt of the said James W. Todd, for the sum of $1,330 40 and $38 25 costs. That one Henry Blackwell recovered a judgment, in the Circuit Court of Somerset, against said J. W. Todd and Wm. Todd, on the 14th of June, 1842, for $564 16 damages and $36 91 costs, for a debt of the said J. W. Todd. That one Jonathan Potter recovered a judgment, in the Supreme Court, on or about April 4, 1843, for $519 82 debt and $5 costs. That one Nicholas Arrowsmith, on or about April 4, 1843, recovered a judgment, in the Supreme Court, against said Wm. Todd for $555 debt and $5 costs, for a debt of the said J. W. Todd.

That, by virtue of the above stated judgments and the executions thereon, David T. Talmage, Sheriff of Somerset, levied upon all the personal property of the said William Todd, and also upon all the real estate of the said William Todd in the county of Somerset; and advertised all the personal estate of the said William Todd for sale on the 14th of April, 1843; and on that day sold all the personal property of the said William Todd at public vendue, (consisting of the articles and property mentioned in Schedule A. annexed to the bill,) all of which property, with the exception of one bay mare sold for $9 50, was struck off to John Runk or to Richard Tenyck; and the whole amount of the sales of the said personal property was only $315 78.

That the said Sheriff advertised the real estate of the said William Todd in Somerset for sale on the 19th June, 1843, and on that day sold the same for $2,000; and the said John Runk and Richard Tenyck became the purchasers thereof.

That the real estate of the said William Todd in Somerset, at

the time of the said sale, was worth $6,000, and his personal estate about $1,500 ; and that the said William Todd was desirous of raising the money and paying off the said judgments, and was very reluctant to have his said property exposed to public sale by the Sheriff.  But that John Runk, who married Mary, a daughter of the said William Todd, and Richard Tenyck, who married Jane, another daughter of said William Todd, urged and solicited the said William Todd to consent to let his property be sold by the Sheriff at public vendue ; but that the said William Todd at first wholly refused so to do ; but, after repeated solicitations from the said J. Runk and R. Tenyck, and their telling him that there were several unjust claims held against him by persons in New York, arising upon notes given by said J. W. Todd and endorsed, or pretended to have been endorsed, by the said William Todd ; and that the only way to defend himself against those unjust claims was to allow his property to be sold at public sale by the Sheriff.  And the said Wm. Todd, having been at that time also prosecuted on two other notes of $500 each, drawn by the said J. W. Todd and endorsed or purporting to be endorsed by the said Wm. Todd, he the said Wm. Todd being an infirm and deaf old man, and but little acquainted with law business, reluctantly consented to let his property be placed in the charge and custody of the said J. Runk and R. Tenyck for the purpose of paying the judgments above stated, and also for the purpose of protecting the said property from unjust claims for which suits had been commenced against him ; and upon the further condition that the said Wm. Todd should have his support out of the farm, and that at his death the farm should be sold and equally divided among the legatees named in the will of the said Wm. Todd, after the children had been put on an equal footing by deducting previous advancements.

That the said J. Runk and R. Tenyck agreed to the said condition and arrangement, and, for the purpose of more effectually binding themselves to the performance of the said agreement, a written agreement was entered between the said J. Runk and R. Tenyck, of the one part, and the said Wm. Todd, of the other part, which embodied, in substance, the agreement above stated,

and which said writing was drawn by J. M. Mann, Esq., and was duly executed by the said parties and delivered to the said Wm. Todd. That, at the time of the delivery of the said written agreement to the said Wm. Todd, the said J. M. Mann remarked that he should take good care of that paper. That, some days after the said paper writing had been delivered to the said Wm. Todd, the said J. Runk and R. Tenyck came to the house of the said Wm. Todd, and wanted to examine the old deeds for the farm ; and the papers relating to the farm were brought out and laid on the table, and the paper writing and agreement above mentioned was also laid on the table with the rest of the papers. That, some weeks after this transaction, the said Wm. Todd wanted to see the said paper writing; and he searched among all his papers and could not find it ; and that said Wm. Todd repeatedly after that time searched for said written agreement, but could not find it, and never saw the same after the day when it was laid on the table with the deeds which the said J. Runk and R. Tenyck wished to see. And the complainants believe and charge, that the said written agreement was either taken away by the said J. Runk or R. Tenyck, or that the same is lost.

That, in pursuance of the said agreement with the said J. Runk and R. Tenyck, the said Wm. Todd confessed a judgment to the said J. Runk and R. Tenyck, in the Common Pleas of Morris county, on the 3d of July, 1843, for $238 12 of debt (the same being double the amount actually due,) and $4 costs. By virtue of which said judgment and the execution issued thereon, the Sheriff of Morris, J. M. DeCamp, levied upon and sold, at public sale, the tract of land and premises before described as situate in the township of Washington, in the county of Morris, and the same was struck off to the said J. Runk and R. Tenyck, for $100. That the said last mentioned tract of land and premises, at the time the same was so sold, was worth $450.

That the reason why the said personal and real property of the said Wm. Todd was permitted to be sold at prices so much below its real value was, that the said Wm. Todd relied upon the said agreement so entered into with the said J. Runk and R. Tenyck, as aforesaid, and his confident expectation that the said

J. Runk and R. Tenyck would hold the said property of the said Wm. Todd purchased by them at Sheriff's sale upon the trusts and conditions in the said agreement mentioned, or that they would re-sell the said personal property, and apply the proceeds of such re-sale to the payment of the said Wm. Todd's debts, as they promised to do.

That on or about June 9, 1843, the said William Todd duly made, executed and published his last will and testament, in the presence of three witnesses, so as to pass real estate, and therein and thereby did devise and bequeath as follows, to wit:

1st. "I bequeath to my executors, and the survivor of them, their executors and administrators, $1200, in trust, nevertheless, to place the same at interest on clear freehold estate, and to pay the interest thereof coming due annually to my daughter Margaret Ann, now the wife of Barnabas T. Mulford, during her life; and, in case of her personal necessities requiring, my executors or the survivor of them as aforesaid may give, according to their discretion, from time to time, a portion of the principal to her or to her order, and should she, at her death, have any children, then it is my will that any part which may remain in my executor's hands, or the survivor of them, unexpended, shall be equally divided between her children, share and share alike.

"2d. I give and bequeath to my youngest son, Theodore, the sum of $2,000, to be paid to him in one year after my decease, or as soon as my property can be turned into cash, and whatever sum of money he may owe me to be deducted out of the said $2,000.

"3d. It is my will, and I do hereby order and direct, that, as soon after my decease as may be convenient, all my estate, both real and personal, which I may own at my decease, shall be sold by my executors hereinafter named, either at public or private sale, for the best price that can be had for it, hereby giving my said executors full power and authority to make deeds of conveyance for the same in as full a manner as I could have made when alive; and from the proceeds of sale to pay all my just debts and funeral expenses; and all the residue of my estate to be divided as follows, that is to say :

"1. I give and bequeath to my son James W. Todd $5 and no more.

"2. My son Wm. W. Todd, and my four remaining daughters, viz : Mary, the wife of John Runk, Jane, the wife of Richard Tenyck, Sarah, the wife of James Van Pelt, and Elizabeth, the wife of Cornelius T. Beekman ; my son William to have two shares to my daughters one ; but the share of Sarah, the wife of James Van Pelt, it is my will and I do hereby order the same to be held in trust by my executors and the survivor of them, his executors and administrators, and the same to be placed out at interest and secured by bond and mortgage, and the interest thereof coming due annually to be paid to her or to her order ; and, in case of her personal necessities requiring, my executors or the survivor of them as aforesaid may give, according to their discretion, from time to time, a portion of the principal, and at her death the remaining part of her legacy to be divided equally among her children.

"3. The sum of $1200 I have already advanced to my son William, which it is my will shall be deducted from his share, and also, in like manner, the sum of $400 to be deducted from the share of each of my four last mentioned daughters, for the out-fits they received from me at the time af their marriage."

Lastly, he appointed his son Theodore Todd and his friends Abm. W. Cortelyou and Wm. J. Todd executors.

That the said Wm. Todd died on or about Sept. 20, 1845, and that, on or about Oct. 4, 1845, the said Abm. Cortelyou and Wm. J. Todd proved the will.

That said testator left the following children him surviving, viz : Mary, wife of John Runk, Jane, wife of Richard Tenyck, Sarah, wife of James T. Van Pelt, Elizabeth, wife of Cornelius Beekman, Wm. W. Todd and James W. Todd, children by his first wife, and Margaret Ann, wife of the complainant Mulford, and the complainant Theodore S. Todd, children of the second wife.

That the said J. Runk and R. Tenyck took possession of the real estate of the said Wm. Todd, so sold at Sheriff's sale, and rented the same to a son of the said R. Tenyck, and received the rents, issues and profits thereof.

That the said J. Runk and R. Tenyck, about the time of the delivery to them of the deed for the real estate of the said Wm. Todd in Somerset, mortgaged the said premises to one ——— Vandervcer, for $2,100 or thereabouts, which mortgage still remains due and unpaid. That, at the times of the sales of said farm in Somerset and of said tract of land in Morris, neither was incumbered by any mortgage or other incumbrance, except the judgments before stated.

That, besides the proceeds of the said personal and real estate of the said Wm. Todd which, by means of the said agreement with the said Wm. Todd, the said J. Runk and R. Tenyck got possession of, the said Runk and Tenyck also induced said Wm. Todd, under pretence of carrying out the said agreement in good faith, to place in their hands, or assign and transfer to them, a large amount of personal property, consisting of bonds, mortgages, promissory notes and other choses in action, the particular nature, amount and description of which is not fully known to the complainants. But they charge that, among other choses in action transferred by said Wm. Todd to said John Runk and R. Tenyck in pursuance of said agreement, or obtained by them from said Wm. Todd under pretence of said agreement, was a bond which said Wm. Todd held against one John McKinstry for $1,000 ; also a bond and mortgage against one Wm. Willets for $300 or thereabouts ; also a promissory note of said J. Runk, payable to said Wm. Todd, for $1,000 ; also a promissory note of said Richard Tenyck, payable to said Wm. Todd, for $45. That all the moneys due on the said bonds and notes have been collected by said J. Runk and R. Tenyck, or might have been collected but for their negligence or wilful default.

That the said J. Runk and R. Tenyck also received of pension money due the said Wm. Todd at the time of his death $37.

That the said J. Runk and R. Tenyck have wholly neglected to comply with the trusts, provisions and conditions of the said agreement under which, or by pretence of which, they got possession of the real and personal estate ; and that they have converted the said personal estate and the rents and profits of the real estate to their own use.

The bill prays, that the said agreement made by said Runk

and Tenyck with the said Wm. Todd may be performed by said Runk and Tenyck; and that they may set forth an account of all the moneys received by them, or either of them, since the date of said agreement, for or in respect of the personal estate of said Wm. Todd, or for or in respect of the real estate and other effects purchased by them at the Sheriff's sale, or which in any way came to their possession under or by virtue or in pursuance of said agreement or any other agreement of a like nature; and also a description and particular statement of such parts of said lands as have been sold by them, and of all moneys received for or in respect of such sales, and an account of all bonds, mortgages, notes, &c. delivered to them, or either of them, after the date of the said agreement, and of all moneys received by them or either of them in payment of or by virtue thereof; and that the real estate of the said Wm. Todd which, since the date of said agreement, has come to the hands of the said J. Runk and R. Tenyck may be sold under the direction of this Court, and that the proceeds thereof, together with the proceeds of the personal estate, be divided among the legatees in the will of said Wm. Todd named, according to the terms of the said will; and for such other and further relief &c.

The defendants Runk and Tenyck put in their joint and several answer, denying the material allegations of the bill; and testimony was taken on both sides.

*W. Halsted* for the complainants. He cited 1 *Green's Ch.* 501; 4 *Dessaus.* 505; 4 *J. Y. Marsh.* 593; 2 *Black's Rep.* 198.

*P. D. Vroom* for the defendants. He cited 1 *Greenl. Ev.*, sec. 266; 5 *John. Ch.* 1.

THE CHANCELLOR. The agreement charged in the bill is not sufficiently established to justify a decree for specific performance. The answer denies it, and there is no substantive proof of it. There is some evidence that the defendants have stated that the agreement was as the bill alleges; but evidence

of these statements only goes to impeach the denial of the answer; it does not amount to substantive evidence of the existence of the agreement.

From the nature of the arrangement it was necessary to put matters in such condition that, as between Wm. Todd and those whose claims he resisted, the property purchased by Runk and Tenyck should be or appear to be really and *bona fide* their property. The idea that the property, notwithstanding the Sheriff's sale, should, as between Wm. Todd and Runk and Tenyck, be the property of Wm. Todd, was an idea which the very object of the arrangement required should be kept secret, that is, confined to the parties to the arrangement. This, and the confidence which would naturally be reposed by Wm. Todd in his sons-in-law, is very persuasive that no written agreement binding Runk and Tenyck to hold the property in trust for Todd was ever entered into. And there is no proof of any such agreement having been reduced to writing.

Again, the alleged agreement and arrangement are not such as commend themselves to favorable consideration. There is no ground on which the Court can relieve from a breach of confidence reposed for such a purpose. Every consideration of policy forbids relief.

Another view was presented, though not very strongly; it is, that, from the age of Wm. Todd and some bodily infirmity alluded to, he was not competent to transact business; and that the case might be put on the ground that the arrangement was fraudulently procured by Runk and Tenyck from one who was incompetent to understand the nature and object of it. I see no evidence of such incompetency.

Decree for defendants.